## Weinedel v. Ward.

(Decided December 8, 1925.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Contracts—Whether Contract for Architectural Services was Obtained Through Joint Efforts and for Joint Use and Benefit of Parties Held for Jury.—In architect's action for portion of fees secured by defendant for architectural work on a lodge building, whether contract for architectural services was obtained through their joint effort for their joint use and benefit, although in name of defendant, held for jury.

2. Contracts—Instruction Submitting Only Question of Time of Making Contract for Architectural Services Held Unduly Favorable to Defendant.—In architect's action for portion of fees secured by defendant, who had been associated with him, for architectural work on a lodge building, instruction submitting only question whether contract by which lodge made defendant the architect for its building, was obtained before or after abrogation of contract between plaintiff and defendant, held unduly favorable to defendant.

3. Contracts—Evidence Held to Support Finding that Contract for Architectural Services was Obtained Through Joint Efforts and for Joint Use and Benefit of Parties.—In architect's action for portion of fees secured by defendant for architectural work on a lodge building, evidence held to support finding that contract was obtained through parties' joint efforts for their joint use and benefit, although in name of defendant.

MARK BEAUCHAMP for appellant.

HASWELL & LUKINS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming

Both appellant and appellee are licensed, practicing architects in the city of Louisville. At the time of the making of the contract of December 3, 1921, out of which this litigation arose, appellant, Weinedel, a young man, had no separate office of his own but was employed in the office of appellee, Ward. He was a member of Preston Street Masonic Lodge, and that organization contemplated the erection of a new lodge building to cost a large sum of money, and both appellant and appellee, then operating together, were negotiating to be named as architects and thus obtain the usual commissions paid for such services. The matter was discussed between them in the office of Ward on several different occasions

for the purpose of formulating plans to obtain this work. Finally the building committee of the lodge requested preliminary plans of appellant, Weinedel, and he in the office of appellee Ward and with the latter's assistance prepared the same and submitted them, some time in August or September of 1921. On September 19 the secretary of the lodge wrote appellant concerning the preliminary plans as follows:

"I am instructed by the building committee of Preston Lodge to notify you of their acceptance of your proposition of September 14th, offering to prepare preliminary sketches of the proposed new home for Preston Lodge for the sum of $250.00."

Pursuant to this letter of employment, Weinedel and the office force of Ward prepared the preliminary sketches, one of which was finally adopted by the lodge and a picture made and used on the front of a booklet or prospectus in raising money for the construction of the building. These preliminary plans, the proof shows, cost Ward's office something like $1,000.00 although they were to receive only $250.00 for the work, the object being to obtain the contract for the working plans and specifications for the building and supervision of its construction upon the regular commission basis of four per cent. on the cost of the structure. While this matter was under consideration in the office of Ward and on December 30, 1921, Ward and Weinedel entered into a written contract whereby Ward employed Weinedel as an assistant architect in his office at a salary of $45.00 per week "and a percentage of all commissions resulting from work brought into Ossian P. Ward's office through the efforts or personal influence of Alfred E. Weinedel, said percentage to amount to at least ten per cent. of the total amount of the commission received by Ossian P. Ward, and upon which Alfred E. Weinedel has claim under this agreement, except in the special case of the Preston Lodge building, in which case Alfred E. Weinedel is to receive one-fifth of the total commission actually received for the job, the balance to be turned over to Ossian P. Ward."

It is further provided in the contract that "all expenses in connection with the job are to be paid by Ward." Ward consented that Weinedel's name might be placed on the door of his office as a practicing architect and that he might have stationery printed with his,

Weinedel's, name thereon as architect, but it was further provided:

"With the exception of the Preston Masonic Lodge, for which Alfred E. Weinedel now has the commission, no other jobs shall be obtained or conducted under the name of Alfred E. Weinedel as architect. If, however, it is convenient and approved by Ossian P. Ward, Alfred E. Weinedel's name may appear as associate architect in connection with such work as he may bring into Ossian P. Ward's office, but the management and direction of all said jobs shall be done by Ossian P. Ward.

"Alfred E. Weinedel may use his own stationery in connection only with the Preston Lodge building, or any other work that Ossian P. Ward may decide to be advisable, but he shall not be otherwise known as an independently practicing architect occupying offices with Ossian P. Ward."

The contract also contained this provision:

"This agreement may be abrogated by either party upon sixty (60) days' written notice."

For some time the parties conducted the office under this arrangement. Then came a misunderstanding and argument which provoked appellee Ward, on March 2, 1922, to write a letter to appellant, Weinedel, abrogating, in part, the contract in accordance with its terms. In this letter, after notifying Weinedel that the contract would be concluded on May 1st, following, it was said:

"I will pay you a straight salary of fifty dollars ($50.00) a week, but you will have no interest in the profits of this office or the work brought into it by you, except in the two definite cases of the Preston Lodge, and the Brinke residence, which have been procured under and will be governed by our agreement of December 30th, 1921, which ceased to operate sixty (60) days from date, or May 1st, 1922.

"Your salary of $50.00 a week will also start from that date, and if at the end of the year my business and your services warrant it, I will pay you a bonus at my discretion.

"Your name shall be removed from the door of my office, and you may use your stationery only in connection with the Preston Lodge and the Brinke residence.

"If you should decide to sever your connection with this office before either of the two jobs mentioned above are completed, I am to receive either the amount of commission due me for work done in accordance with the schedule of the American Institute of Architects governing same, or I shall be reimbursed for all costs incurred by me in connection with them, at my option."

On May 1st appellant withdrew from the office of Ward and established an office of his own. On May 16th, following, he entered into a written contract with the Preston Masonic Lodge for the making of the working plans and specifications, and supervision of the Masonic Temple, by which it was provided that Weinedel was to be the architect, and that "it is the purpose of the said owner (lodge) to construct a building to be used as a lodge hall and for lodge purposes . . . and desires to and does hereby employ said architect as the architect for said building; now, therefore,

"In consideration of the sum of two hundred fifty ($250.00) dollars heretofore paid by the owner to the architect, receipt of which by the architect is hereby acknowledged, and in further consideration of mutual promises and agreements hereinafter set forth, the parties hereto agree as follows:

"The architect shall render the usual professional services of an architect, consisting, in general, of furnishing preliminary sketches, working drawings, specifications and detail drawings, the taking of bids, letting of contracts, auditing of accounts, general supervision of the work, etc."

The second paragraph of the contract provides:

"The total fee and remuneration of the architect for services as above provided shall be a sum equal to four per cent. of the actual cost incurred by the owner in the construction of the building, and said remuneration shall be due and payable by the owner as follows:

"Two hundred and fifty and no/100 ($250.00) dollars herein acknowledged.

"Thirty-three hundred and fifty ($3,350.00) dollars upon completion by the architect of working plans, specifications and such detailed drawings as

may be necessary for taking bids, and the taking of bids.

"Remainder upon completion of the work."

It is further provided in the contract that the architect represented that the proposed building when constructed along the lines indicated by the preliminary sketches would cost approximately one hundred and twenty ($120,000.00) thousand dollars. This contract for the lodge building is the one which both appellant and appellee had in contemplation when they entered into the contract on December 30, 1921, referring to the job of making plans for the Preston Lodge building, on which appellant was to receive one-fifth of the profits and appellee four-fifths, the latter to pay all overhead expenses, and the same contract to which appellee, Ward, referred in his letter of March 2nd, and which we have copied, when he referred to Preston Lodge.

Appellant, Weinedel, contended that there was no contract with the Preston Lodge save the one evidenced by the letter of September 19th, calling for preliminary plans and sketches at the time of the making of the contract between the parties litigant on December 30, 1921, and that the contract by which appellant was awarded the work of making final plans and specifications and all supervision of the construction of the building was not made until May 16, 1922, some sixteen days after the partnership contract had been abrogated pursuant to notice given by appellee Ward, on March 2nd. Manifestly the contract had been abrogated before the making of the contract on May 16th, but much of the work called for in the written contract on May 16th, had been completed for the Preston Lodge building before May 1st, and it was this job, according to the great weight of the evidence, that induced appellee to take appellant into his office, pay him a weekly salary, allow him to advertise himself on the office door as a practicing architect and to share in the profits of the business of the office. This is made reasonably certain by the contract of December 30th, itself, for that writing provides that appellant, Weinedel, is to have ten per cent. of the total amount of commission received on any business brought into the office by him, but was to have twenty per cent. or one-fifth "in the special case of the Preston Lodge building." It is further provided in the contract "with the exceptions of the Preston Masonic Lodge for which Alfred E.

Weinedel now has the commissions no other job shall be obtained or contracted under the name of Alfred E. Weinedel as architect."·

For appellant it is insisted that the expression, "for which Alfred E. Weinedel now has commission," refers to the commission to make preliminary plans and sketches for the building and to nothing more; while appellee Ward insists that this part of the contract relates to the final plans and specifications to be embodied in a future contract and which was embraced in the contract of May 16th. Weinedel then had a contract for the preliminary sketches only so far as the letter of September 19th shows, but the evidence seems to prove that after that date and pursuant to that letter Weinedel and Ward had prepared and caused to be prepared not only preliminary sketches but final drawings for the Masonic Lodge building; that much of the final work had been completed at the time of the making of the contract on December 30th, and that all persons in the office of Ward considered it as settled at that time; that the firm was to do the Masonic lodge work; that Weinedel had "a commission or contract" for the Masonic Temple job. It is further shown in evidence that when an architect gets the contract for preliminary drawing and his plans are finally adopted, as was done in this case, he may consider himself as engaged to make the final plans and specifications, and to do the things required of an architect upon the regular commission basis, and that this is the usual and customary rule existing between builders and architects. It also appears in evidence that appellant, Weinedel, being a young architect, feared he was not well enough established to obtain the contract for the Preston Lodge building for himself upon his own merits without an office and place of business and some standing as an architect, although he was a member of Preston Lodge, and, therefore, was presumed to have and did have a certain amount of prestige and standing with the members of that organization and some right to expect that he would be called upon to submit plans for the new lodge building, and that his plans would be adopted over plans of other architects of equal merit, the preference being given to a brother of the lodge. His name was placed upon the office door of appellee, Ward, and also in both telephone books employing Ward's telephone numbers as appellant's telephone numbers.

In answering the question: "Will you state to the jury how his name happened to be on the door of your office?" appellee, Ward said:

"He knew that the Preston Lodge was coming up. He told me that they contemplated building a new lodge building. He being a member of that lodge, he was fairly certain he could get the work, but if he wanted to get it he would have to have his name, have an office, have his name on stationery, and pose as a practicing architect, otherwise he probably wouldn't have prestige enough to swing it. I told him he could put his name on the door, also get out stationery and go after his work. It was done and finally resulted in getting the proposition for Preston Lodge."

The record seems to support the inference, if not the conclusion, that the contract of December 30, 1921, between appellant and appellee was entered into for the express purpose, between the parties, of mutually obtaining the contract for the architectural work on the Preston Lodge building and that the services of appellant, Weinedel, for which appellee was to pay $45.00 per week were merely incidental, affording appellant an opportunity to have an office with an architect and to hold himself out as a practicing architect ready to receive contracts and to perform services as such. There is no substantial denial in the evidence that appellee, Ward, incurred large expenses in trying to bring about a contract between the lodge and his assistant, Weinedel. The preliminary plans for which they should have had a much larger compensation were agreed to be made, and were in fact made for $250.00 as an inducement to the lodge to place the work with Weinedel, who was then in the office of appellee, Ward, under the contract of December 30th. Acting together the parties did obtain the contract from the Preston Lodge for Weinedel, although the writing was not actually signed until May 16th, some days after the contract had in part been abrogated. To the extent that the plans and specifications and other work for the Preston Lodge building had been completed in the office of appellee, Ward, before May 1st, the contract was not abrogated. The contract itself was a property right which the appellant and appellee, acting together, had jointly acquired. The mere abrogation of the contract between themselves under which the contract for the

plans was secured, did not give to appellant, in whose
name the contract was made for the use and benefit
of both, the full benefits of the contract, which was the
result of their joint efforts and cooperation through a
number of preceding months, it would seem.    In all
events there was sufficient evidence indicating that the
contract was obtained through their joint efforts for
their joint use and benefit although in the name of appel-
lant, Weinedel, much of the work on the plans being done
before March 1st, and nearly all of it before May 1st, the
time appellant withdrew from the office of appellee, to
make it a question of fact for the jury and to have fully
warranted the trial court in submitting the question by
proper instruction to the jury.

Appellant insists that the instructions were erron-
eous in more than one particular, (1) with respect to the
time when the contract of December 30th was terminated
by notice from appellee, Ward.   We have examined the
instructions and they appear to submit to the jury only
the question of the time of the making of the contract by
which the Preston Lodge made appellant, Weinedel, the
architect for its building, that is, whether he was made
architect for the building before or after the expiration
of the contract of appellee, Ward, on May 1st.   This, it
seems, was more favorable to appellant than he was en-
titled to have, for the court should have also submitted
to the jury the question of whether the contract which
the parties made between themselves on December 30,
1921, was induced by the hope of obtaining the contract
for the Preston Lodge building; and, if so, whether after
entering into that contract between themselves, the par-
ties did by their co-operation induce the lodge to let the
contract to appellee, Weinedel, and when so let it was
for the use and benefit of both appellee and appellant
under the terms of the contract of December 31, 1921.
There was evidence in the record tending to prove the con-
tract was actually made before the abrogation of the con-
tract between the parties to this suit, and the jury no
doubt accepted this evidence as correct. It no doubt could
have reached its verdict upon the other grounds much
more readily and with absolute assurance of the correct-
ness of its position.   There is nothing in the instructions
of which appellant could rightfully complain.   There is
also evidence in the record tending to show appellant,
Weinedel, at the time he left the office of appellee prom-
ised and agreed to pay appellee such part of the com-

mission from the Preston Lodge work as was due him under the contract of December 30th. Other evidence was introduced tending to show that Weinedel had come into the office before the termination of the contract on May 1st, and announced to appellee and the office force that he had then obtained the Preston Lodge contract; that the lodge had passed upon the matter the night before. All this considered, the evidence was sufficient, it would seem, to support the verdict of the jury. We find no error warranting a reversal of the judgment, and it is, therefore, affirmed.

Judgment affirmed.